Good morning. May it please the court, I'm Jim Bickerton, counsel for the appellants. This case presents a situation where a trial judge dismissed a case under Rule 12b-6 and didn't do the most basic thing that we expect our district court judges to do in a diversity action, which is to apply the case law of the state. If that case law is missing, then decide how the Hawai'i Supreme Court would rule on the issue. Was she certified? The question, did she not, to the Hawai'i Supreme Court in related litigation? No, she certainly did not certify it, Your Honor. It is before the Hawai'i Supreme Court. We happened to have another case, the same team of attorneys, pending in state court that was not removed. That case worked its way up to the Intermediate Court of Appeals, and then last year the Hawai'i Supreme Court accepted a transfer application made by the parties. It was actually made, I think, by both sides, urging, and it's interesting that Mr. Rosen joined in that. He wanted the Hawai'i Supreme Court to take it. One of the criteria for the Hawai'i Supreme Court to take the case is that it has to present a novel question or a question of public importance. So in that sense, some of these issues have not previously been decided, but Judge Mulway took it upon herself to decide them and didn't follow the basic law of Erie v. Tompkins. Well, I guess the question that we posed to you by way of the order when we asked you to comment on that was a practical question of should we wait until the Hawai'i Supreme Court hopefully resolves some of these issues so that we'll be able to give guidance, if necessary, to the district court if we do decide to remand. Please forgive me, but I had not seen an order. This may have come down just in the last few days, and I have been moving around quite a bit the last couple days. We're not aware of any order either, Counsel. It is something that I was going to suggest to you. Basically, the way I look at it is that Judge Mulway, if I could expand a little bit on that point and put it in context, Judge Mulway, the district judge, was facing two claims, a common law claim and a Chapter 480 claim, what we call the UDAP claim. She, first of all, in the common law claim, did not want to follow the Hawai'i Supreme Court cases on the common law of nonjudicial foreclosure. Then on the UDAP analysis, she said, well, because I don't see a violation of statute or case law, there can't be a UDAP. You folks have already spoken to the second question in the Compton case. So right there, she's, I think, in error on that question of the UDAP case. The question of the common law issue, the continued vitality of Ulrich and Silva, we think that is going to be addressed by the Hawai'i Supreme Court very shortly. So then the question is, should you be trying to sustain her decision on alternative grounds? Because she clearly erred in not following the Compton doctrine. The same judge who was reversed in Compton for doing basically the same thing, going outside the UDAP statute looking for alternate sources of the duty. Now, the Silva case is almost ancient, is it not? It's in the 1800s. Probably the age of Erie versus Tompkins, Your Honor. The fact that a case is old is of very little import when the statute that you are construing is of equal age. Silva was 1884. The statute is 1874. And it's really, although Judge Mulway said it was substantially amended in 2008, I mean, we've presented the legislative history. There was virtually no amendment of the substantive portions that we're all concerned about here. Those provisions remained almost identical. What changed in 2008 was they increased the transparency by requiring an attorney to be the business agent who conducted the sale. But essentially beyond that, there were really no substantive amendments that pertain to the issues in this case. So Silva and Ulrich were interpreting the very language that Judge Mulway had before her. And she made, I think, a gross error in saying that because the legislature didn't choose to expressly bring those cases into the statute in 2008 when it tinkered with the statute, that somehow they've been legislatively overruled. Counsel, I gather that your primary point is that UDAP is what really controls here. Whatever the remedies available under common law, and I know you're not saying they don't exist, but even if they didn't exist, I gather from your pleadings that you say that UDAP is a broad remedial statute and that what occurred here is a violation of that statute. We do say that even in the absence of common law. I don't think that there is common law. Common law is just one of the ways in which courts can derive the finding that a public policy exists. For consumers, you look and see, was this business's conduct violating an established public policy? And the case law says public policy can be established through common law, but it can also come from other sources. And we rely, for example, on the 1890 legislature's preamble to this statute where they said this is what we're trying to have you do in this case. Let me ask you this, Counsel. As you know, when somebody seeks a writ of certiorari with the U.S. Supreme Court, the Supreme Court lays out what the questions are that it will address, if at all. In this case, with the Hawaii Supreme Court, I gather that the court's decision to hear Hungate was discretionary on its part. It wasn't mandatory, right? I believe so. The mandatory transfer is only available in certain types of cases. I don't believe that this was the automatic type. And they bypassed the intermediate court at the request of both parties, right? That's right. And did the Hawaii Supreme Court indicate that it was going to address specific questions or it simply said we're going to take this case, whatever's there? It took the case, in a sense, as the court of the first appeal. And in Hawaii, the way it works, if the Supreme Court takes it, it's also the court of the last appeal. It took the whole case. The case is very much on all fours with this one. There is a slight difference because in Hungate, the claim founded on the use of advertising of a quitclaim deed and the argument that that is a way of discouraging bidders at auction, the trial court in that case found that stated a claim. She did not dismiss that. And she therefore certified under Rule 54B the dismissal of the postponement claim and the 28-day claim. And the 28-day claim is an interesting claim because it actually exists here in the Bald case, but it was not alleged. You didn't allege one of these cases that overlap. As I recall, the quitclaim deed was not pursued in this case. Is that correct? I know it was in others. It was in Bald. We have the two issues. Okay, both issues. The three cases that you have before you, I'll call Lima, Guibo, and Bald, were all pretty much the same. There are slight factual differences. For example, the form of the mortgage in the Bald case, the key paragraph is paragraph 21, not 22, but it's the same language. But other than that, they both present the argument about the quitclaim and then the argument about the postponement. Let me ask you, earlier my colleague, Judge Tallman, asked you whether you thought we got to wait for the results in Hungate. I got the impression you said that's right, but you didn't specifically say so. Is that a correct answer, that we should wait? I think that it is prudent to wait because it is coming so soon. I hesitate to ask you to do that because these cases are already very old. Judge Watson, who is the other district court judge who has three of these before him, was not sufficiently persuaded by Judge Mulway's reasoning to dismiss the cases pending before him. He chose to stay them pending your decision. Let me ask you, under Hawaiian law, let's assume for a moment, arguendo, that the Hawaii Supreme Court decides Hungate your way or we decide it your way. What happens with the properties that have been sold under the regime against which you complain? Some of them go back many years now at this point. We have not alleged in these cases a claim to set aside, rescind, or void any sale. The defendants are the banks and lawyers who conducted the foreclosure. This is all for money and for future? That's what these cases are about, yes. So what's the harm in waiting until the Supreme Court decides Hungate? I think that there is no harm. What I'm concerned about is Hungate will not completely address one of the issues, which is the quitclaim issue, because that issue isn't raised there. However, I do believe that the general principles about the interaction between the nonjudicial statute and the UDAP statute will be elucidated in Hungate and will guide the decision of the court on the quitclaim deed. The concern I had, which prompted my question to you, is a practical one. If we decide the issue differently than the way the Hawaii Supreme Court decides it, our ruling will be binding on these cases and perhaps on federal district courts in the future, but this is an issue of state law over which the state Supreme Court is the final expositor. I hesitate to make a ruling on an issue when I know that the final expositor is about ready to have its final say. I agree with that sentiment. What I was suggesting is you can reverse now because it's clear that Judge Mulway aired your jurisprudence. So you want us to reverse? You want us to decide if we're going to reverse but not if we're going the other way? Yes, I do. I think so. That is a fair statement because if she didn't follow— Heads, I win. Tails, you lose. I like those odds. But if she didn't follow Compton, you'd have to be looking to sustain her. In other words, if you want to wait for the Supreme Court, if you're going to not immediately reverse her, but she could follow the Hungate decision. It's going to come down and it's going to educate her, and she in the first instance can hear it on perhaps a better record than you have now. I mean, this is a 12B6 record. I'm not familiar with Hawaii state appellate practice, but is there any kind of an average amount of time or a time limit? I know they argued this case. Yes, there is. We actually made a study of that because we thought this question might come up, and it's about six months on average, five to six months, and we argued this on June 7th. So we are looking at sometime in November, December if they keep to their average. There is no rule requiring that, but it's imminent is how we look at it, and I think they're well aware of the pile of cases that is standing behind this one. There's about 17 altogether in various courts, six or seven in the federal court and an equal number in the state court. Counsel, let me ask you this. I'm from California. In California, when there is a foreclosure sale, there's almost always title insurance involved. It really doesn't matter whether it's a grant deed or a quit claim deed or some specialized deed because the parties are insured by title insurance. Is that not the practice in Hawaii? Title insurance does not automatically, as I understand it, get acquired if there's a quit claim deed. The title companies like to see a warranty deed. Oh, I'm sure they do. But, I mean, the reality is title companies will insure anything because they usually don't have to pay anything. Or a price. Of course, of course. But the reality is that is it not the practice at a foreclosure sale in Hawaii, be it under judicial or private sale, for the intended purchasing party to make arrangements with the title company to insure title? Yes, it is. And I believe that to answer Judge Tolman's question, it would be safe to say that all of these people who had acquired these subsequently from the bank, either in REO sales or at auctions directly, would at this point have title insurance. So how could they be harmed by not giving a quit claim deed if the title insurance company steps in and guarantees their title? The person who's acquiring it doesn't know if they will get title when there is going to be a dispute. And a good example is this very case. In Bald, Mr. Rosen only did a 28-day notice. Now, that's not a claim alleged here, but the point is a bidder coming in would see that and not want to bid on this property. Well, maybe he wouldn't, but the title insurance company would know that as well. And if they agreed with you, they may ask for some kind of a premium or something, some plus factor, if you will. But they'll insure it, right? Yes, but that plus factor is a deterrent to bidders when there's another one down the street at the judicial auction that has the stamp of a judge on it. So that's one of the ways in which bidding is deterred. When a judicial foreclosure takes place in Hawaii, not what we have here, but a judicial foreclosure, does the statute provide what kind of deed the foreclosing official is to give? There's a commissioner's deed, but by operation of law, a judge has made a final order eradicating all inferior liens and other potential ways of contesting it. And res judicata blocks the mortgagor from coming in and challenging. That's the big difference. So there's nothing comparable here. You've got the imprimatur of the state court, in effect, describing the title that exists after the sale. That is correct. There is, however, an equity. Is there an equity of redemption after a judicial foreclosure in Hawaii? There is an opportunity. I'm not that familiar with the judicial. I'm not an expert in judicial foreclosure. There is, right up until the fall of the hammer, a chance for the borrower to, in judicial foreclosures, to get the property back. Normally, it's a one-year period after the hammer falls where they can redeem the property if they pay. Is that true in Hawaii? We do not have that in Hawaii. It's up to the fall of the hammer. If I may reserve my last 20 or 30 seconds. You may do so, counsel. Thank you. We'll hear from the other side. Thank you. Counsel, you may proceed. May it please the court. My name is Clyde Wadsworth, and together with Blaine Rogers, I represent the defendant, Appalee Wells Fargo Bank, N.A. Given the overlap of the issues raised in the Hungate case and this appeal, we agree it makes sense for this court to defer disposition of this appeal until Hungate is decided. If the court decides to do that once the Hungate decision comes down, we would request an opportunity to submit supplemental briefing. And if this court would deem it helpful to make further oral argument. It's important to remember, though, that even if this court defers disposition, what Hungate won't decide. Hungate won't resolve whether the mortgagee in a non-judicial foreclosure has a duty to convey the property with warranties. That's not an issue in Hungate. I think we all agree on that. That's a quick claim argument? That's a quick claim argument. Hungate also won't resolve whether the plaintiffs in this case adequately pleaded that the alleged UDAP violations caused them harm. Plaintiffs have to meet a tougher pleading standard in federal court than in state court. Under the Iqbal Twombly standard, conclusions aren't enough. Their complaint has to contain sufficient facts to state a claim that's plausible on its face. Now here, Plaintiff Lelis didn't plead that the alleged failure to publish notice of her postponed foreclosure caused her any harm whatsoever. And Plaintiff Bald made only conclusory allegations that the amount his property sold for at auction wasn't enough to cover his debt. I thought the theory was that if no one but the offeror knows that the sale has been postponed, then how can any putative bidder know when and where to appear if they might be interested in submitting a bid? Well, their theory, Your Honor, is that the postponement has to be published. The statute requires that it be publicly announced. So at the time of the foreclosure, the foreclosure auction, if there is a postponement, it is cried out. It is publicly announced to the prospective purchasers who are there. So that's how they know, and that is what complies with the statute and what complies with the mortgage. But I thought the allegation here was that the postponements were neither published nor was ever a notice ever given to the borrowers. So how do we know that somebody stood on, I don't know, the steps of the courthouse or wherever the sale was to take place and said in a loud voice to whoever might be present, we're postponing this auction for 30 days? Your Honor, they do not allege that the postponement was not publicly announced. That is not an allegation. But how could they allege that if there was nobody there? It seems to me that it's very difficult to expect the plaintiff to be able to establish that fact. Well, that would have to be the allegation, Your Honor, to establish under the governing statute that proper notice wasn't given because the statute only requires that there be a public announcement. Would you concede that if Mr. Rosen had sat in his office and done nothing, the date came and went and then the auction didn't occur until later, that that would be a violation of the statute? Yes. If there was no public announcement, that would be a violation of the statute. If there was no public announcement, that was the ruling that the court made in Keiko'oha. Counsel, I'll call it UDAP for short. Yes. I view that as a counterpart to the FTC Act. It's remedial in nature. It's supposed to be liberally construed. And I've got to tell you honestly that reading these cases, common law cases, and particularly since they are so old, it seems to me we're really dealing with this case at two levels. You're fighting about the common law duty, if any, and then you're talking about the effect of a new statute. Our court and your local bankruptcy court have construed this UDAP and it's a really low bar kind of thing. I mean, you don't have to prove very much to at least allege a cause of action. Now, whether you can prove it is another matter. And it seems that everything is based upon the facts of the individual claim. So let's take the claim here. As I recall this one, this is one where it was postponed four times. Is that correct? That's not correct, Your Honor. How many times was this one postponed? That's the Hungate case. Okay. Mr. Bald's, first of all, they don't allege in this complaint. Okay. But what's your contention? So they don't allege in this case that multiple postponements created a UDAP violation. In fact, I believe for Mr. Bald what the record shows, although this is not alleged in the complaint, what the record shows is that there was one postponement. Let me move to a hypothetical then because it will help me understand better what your position is. Let's say hypothetically, let's start with the Hungate situation. So you've got four postponements. Let's say that there were 20. Would that be a violation of UDAP? Would that be unfair? It would depend on the circumstances, Your Honor. We agree that there are several duties that the mortgagee has. The mortgagee has a duty to comply with the nonjudicial foreclosure statute, has a duty to comply with the terms of the mortgage. Hawaii law imposes a duty of good faith and fair dealing, so it would also have a duty to refrain from self-dealing. In the case of 20 postponements, if there were also allegations that the mortgagee was self-dealing and that there was, therefore, specific allegations that met the Iqbal Twombly standard in federal court. You say it takes Iqbal Twombly. Is that what's required in an FTC claim? Or is it just a regular notice pleading? I get you if you're talking about fraud. I get you with that. But if you're just claiming it's unfair, does that require Iqbal Twombly pleading levels? I would say yes, Your Honor. What case would you rely upon for that? I would have to rely on Iqbal Twombly. I'd rely on Twombly. That's a little different. It's an antitrust case. Compton as well. Compton applies the Iqbal Twombly standard, I believe. I believe that in Compton the court. Is it fair to say, putting aside for a moment the pleading standard, it sounds to me like you are at least in the hypothetical agreeing that these cases have to be decided on a fact, case-by-case basis. Is that a fair statement? In other words, if you had my 20 postponement illustration, you could see that maybe with those standards that you talked about, it might not be fair, and maybe in that case there would be a claim. If there were sufficient allegations that pled a theory like that, then yes, perhaps. This case is not that case. Why aren't there sufficient allegations to raise a question of fact, certainly with respect to the quit claim issue and maybe others? I'm sorry, what was your question, Your Honor? Why are there not sufficient allegations in this complaint to raise a question of fact? Because we believe that in order for the plaintiff to show unfairness under Hawaii law, he has to show an established public policy that more than a quit claim deed was required. And under Hawaii law, there is no established public policy that requires a quit claim deed, anything more than a quit claim deed. And there are good reasons for that, as we have briefed. There is no published Hawaii authority that requires anything more than a quit claim deed. That's unprecedented in Hawaii law to require the mortgagee in a nonjudicial foreclosure to provide something more than a quit claim deed. So there is no established public policy. You said there has to be that, right? There has to be an established public policy, and it has to be a practice that's unethical, et cetera, as the Hawaii Supreme Court has stated. Well, Mr. Dickerton is telling us that there is an established public policy, which goes back to 1884 with the Silva case. Right, but the Silva case doesn't establish a public policy in this realm because the Silva case was a chattel mortgage. It didn't deal with – But isn't the principle the same? No, Your Honor. If it has to be an established public policy, we submit it has to be a policy that applied to the nonjudicial foreclosure of real property. And in the Silva case, where the court made the pronouncement that the plaintiffs are relying on, it was dealing with the sale of livestock, not the – Well, the principle, as I understand it, is that there is a duty, whether it's a fiduciary duty or however you describe it, to maximize the benefit for the mortgagor. And the allegation in this case is that that duty was defaulted, and I'm just still not quite sure why that shouldn't be a matter of evidence and a question of fact. Well, there's no – Our contention is it's a legal issue as to whether requiring, which is what the plaintiffs alleged here, requiring something more than a quitclaim deed to be provided is an unfair practice. There is no question here of what type of deed that was provided. A quitclaim deed was advertised and a quitclaim deed was provided at foreclosure. The issue of whether that's sufficient or whether that's unfair, we believe, in this context, is a legal question because there is no requirement in Hawaii common law that – providing anything more than a quitclaim deed. Unless UDAP itself, in order to avoid unfairness or deception, has a different standard. Is it not fair to say that UDAP itself is to some degree a statement of public policy? The test for unfairness under Hawaii law is that there has to be the offending conduct. Wait a minute. Don't go away from me. Okay. Does – is UDAP itself a form of, if you will, a declaration of public policy about how the legislature wants its citizens to be treated in certain types of transactions? In a general sense, yes. Yeah. And that's what most public policies are. Are they not? They're pretty general. Yes. It's a general consumer protection statute. Okay. And it's supposed to be liberally construed. So what you've got is this new statutory overlay that somewhat parrots the FTC Act. It's very general. It wants the citizens to be treated fairly. And at least based upon our Compton case, we find that there doesn't have to be an underlying duty. Is that correct? There doesn't have to be an underlying duty of care. But the plaintiff under Compton must still adequately allege that the lender used unfair or deceptive acts in its relationship with the borrower. And the court in Compton ruled that the plaintiff borrower had adequately pleaded a deceptive act by alleging that the lender made misrepresentations that misled her into believing that it would modify her loan and not foreclose while the loan was still in foreclosure. In contrast here, the plaintiffs didn't allege that the mortgagee made misrepresentations to the plaintiffs. And they can't because a quit claim was advertised. That's what was provided. And in the notice of sale, the notice of sale stated that the foreclosures could be postponed from time to time with public announcement. And the district court here did not dismiss plaintiff's UDAP claim based on an absence of a common law duty of care. Rather, based on the plaintiff's allegations, the mortgagee complied with the nonjudicial foreclosure statute that established the relevant public policy. And plaintiffs didn't allege a public policy violation based on any other statutory or common law source that the plaintiffs identified. They tried Lopez, but the court rejected that for good reason. But counsel, with respect, I just said our Compton case said you don't have to rely upon a preexisting duty under common law or statutory law. So if my understanding of Compton is correct, all they have to do is to plead that there was a violation of UDAP. And that's really simple. I think it has two prongs to it, if I recall correctly. And one of them is not what you talked about. In Compton, Your Honor, there was a deceptive act that was pleaded. And here, although they have tried to plead a deceptive act, for the reasons that I just stated, they don't state a claim for a deceptive act because the advertisement for the quitclaim deed is what was provided to the purchaser. So there's no deception there. When you're talking about the quitclaim, I thought let's take the postponement situation. I asked you before if that were postponed 20 times, not what we have here, but 20 times, whether that could be a violation of UDAP. But I know you didn't commit to that. But I think you acknowledge that the statute itself, based on facts, individual facts, could find something was unfair based on UDAP, right? If sufficient facts were alleged in that situation, just the 20 postponements wouldn't be enough. But if sufficient facts were alleged to show self-dealing. What about the allegation, and again, I have no idea whether it's true or not, that I think the allegation is like 61% of the private sales handled by Mr. Rosen are postponed versus a tiny fraction, I think less than 10%, on average of the rest of Cal State. Again, I have no idea whether any of that's true. But if you add those two together, could that not, as a matter of pleading, constitute an, in quotes, unfair act under UDAP? If there were multiple postponements and other allegations? Like the ones I just mentioned? Possibly, Your Honor. Thank you, Counsel. Well, finish your point, because your time has expired. But go ahead and finish up your point. The point that I was making, that plaintiffs haven't established any harm, even Mr. Bald alleges that the amount wasn't enough to cover his indebtedness. There's no right to a deficiency judgment in Hawaii. So he has not pled that he suffered any harm as a result of the alleged UDAP violations. Thank you, Counsel. Mr. Bickerton, you have a little bit of time left, less than a minute. Thank you. It is incorrect to say there's no right to deficiency judgment. Under Part 1, there's nothing that precludes them pursuing you for the remaining balance. Part 2, which they chose not to follow, does give the consumer that protection. But it doesn't apply here, though, right? They chose not to take Part 2. You only consider Part 2 because it gives you the whole statutory scheme and defeats their safe harbor argument. But wasn't that, was that passed after the allegations, after the actual occurrence of the claims in this case? No, 1997 Part 2 was adopted. Okay. Because no one ever used Part 1 anymore, and the banks wanted an alternate. They wanted a nonjudicial method. In the 2000s, when we had this great wave of foreclosures, the banks decided to take a chance on using Part 1. But prior to that, it had been moribund. No one had been using it for many years. Is it correct in Hawaii that you don't have what in California we call a one-form-of-action rule so that if you're a lender, you have a lien on somebody's house, and you decide you want to just foreclose, not foreclose, you want to sue on the note? You don't want to foreclose on the house. You can just sue on the note, collect whatever you can, and then ultimately go after the lien out of the deed of trust? We don't have that rule. We have more general common law rules about combining your causes of action or something, but we don't have the California rule. If I could just make two quick points that I wanted to make in response. I neglected to mention that there is another case pending that was argued a month after Hungate in the Hawaii Supreme Court called Matsuyoshi, and in a way it's a companion case. It is not a case that we filed originally, but I appeared in it and argued the appeal. What's the status of that case? Virtually the same. It's just a month behind Hungate. In the Supreme Court of Hawaii? In the Hawaii Supreme Court. What's relevant about that case here is they tried to suggest to you that, well, there were quitclaim deeds that were given here. Well, they were given to the bank. In both Bald and Lellis cases, as I recall, the purchaser was the bank. One of the things Ulrich says is when you, the bank, the mortgagee, are the purchaser at the auction, it's your burden to show the fairness, and that is an issue that is before the court in Matsuyoshi. Does that burden issue still swing that way? Are you suggesting that we should wait for that decision as well? I really hate to make us all wait any longer, but, yes, I think the two cases are going to be intertwined. The court is going to consider them at the same time, probably reference each other when they get decided. Has Matsuyoshi been argued yet? Matsuyoshi was argued about four weeks after Hungate. So they're both submitted cases. Correct. All right, thank you, counsel. Your time has expired. Thank you. The case just argued will be submitted for decision, and we will hear argument next in a series of cases led by Lima v. Rosen.
judges: O'scannlain, Tallman, Smith